**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERRANCE FRAZIER

          *Plaintiff*,

*v.*

CASE NO. 19-11097

DISTRICT JUDGE TERRENCE G BERG

MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

## I.    RECOMMENDATION

Plaintiff Terrance Frazier challenges Defendant Commissioner of Social Security's final decision denying his claim for Supplemental Security Income (SSI). (ECF No. 1.) The case was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the Commissioner's final decision.

## II.    REPORT

### A.    Introduction and Procedural History

Plaintiff applied for SSI on August 11, 2016, alleging he became disabled on June 2, 2016. (ECF No. 11, PageID.166.) The Commissioner denied the claim. (*Id.*, PageID.84.) Plaintiff then requested a hearing before an administrative law judge (ALJ), which occurred

June 15, 2018. (*Id.*, PageID.58-82, 109.) The ALJ issued a decision on July 30, 2018, finding that Plaintiff was not disabled. (*Id.*, PageID.43-53.) On February 27, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (*Id.*, PageID.32-34.)

Plaintiff then sought judicial review on April 16, 2019. (ECF No. 1.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 13, 15, 16.)

### B.    Standard of Review

The court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

2

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you

3

can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.     ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 11, PageID.53.) At Step 1, the ALJ found that Plaintiff had not

4

engaged in substantial gainful activity since he applied on August 11, 2016. (*Id.*, PageID.45.) At Step 2, the ALJ found the following severe impairments:

> Traumatic brain injury/hemorrhage of the cerebrum status post craniotomy following a motorcycle accident; organic brain syndrome; fractures of the upper extremity; left lower extremity monoparesis/foot drop; headaches; status post open reduction/internal fixation of the right hand; status post carpal tunnel release surgery on the right; and depression (20 CFR 416.920(c)).

(*Id.*) At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*)

> Before proceeding to the final steps, the ALJ found that Plaintiff had the RFC
>
> To perform light work as defined in 20 CFR 416.967(b) except he can only stand/walk up to 4 hours in an 8 hour day and sit 6 hours; no ladders, ropes, and scaffolds; would need an assistive device to ambulate and therefore would only have the use of one upper extremity for carrying weights; can occasionally perform remaining postural maneuvers; would have to avoid concentrated exposire [*sic*] to vibration, pulmonary irritants and hazards; limited to unskilled work involving simple routine repetitive tasks; no work with the public; only occasional interaction with coworkers and supervisors.

(*Id.*, PageID.47.) At Step 4, the ALJ concluded that Plaintiff had no past relevant work. (*Id.*, PageID.52.) Finally, at Step 5, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (*Id.*)

## E.   Administrative Record

### 1.   Medical Evidence

Plaintiff's lone argument is narrow, focusing on the ALJ's finding that he can do light work yet needs a cane when walking. (ECF No. 13, PageID.988-989.) Therefore,

although I have reviewed the medical records, I will not summarize them here and instead will refer to them as necessary in the analysis below.

### 2. Function Reports

Plaintiff filled out a function report on September 20, 2016. (ECF No. 11, PageID.194-201.) He explained that he had numerous conditions limiting his ability to work: a "[b]roken limb with screws in it," severe traumatic brain injury, epilepsy, seizures, and memory loss, and he used a wheelchair and walker. (*Id.*, PageID.194.) During the day he would attend doctor appointments, rest in bed, and take medications. (*Id.*, PageID.195.) He was "unable to do anything" and could "hardly walk." (*Id.*) He needed help to dress, could not stand in the shower, could not "get out tub," and could not drive due to seizures, bad focus, his medication, and his inability to remember how to drive. (*Id.*) Asked about shaving, he wrote "damaged nerves," and asked about feeding himself, he wrote, "[b]ad nerves hand shakes." (*Id.*) His girlfriend gave him reminders about medications and grooming. (*Id.*, PageID.196.) He did not cook because he forgot how. (*Id.*) He did not do indoor or outdoor work because he could not stand or walk and he risked falling. (*Id.*) His girlfriend shopped for him. (*Id.*, PageID.197.) He could pay bills and count change. (*Id.*)

He had no hobbies nor could he participate in any due to his condition. (*Id.*, PageID.198.) "[E]very other day" he talked with someone on the phone or received a visitor. (*Id.*) He regularly went to the parks and the river-walk in his wheelchair with his girlfriend. (*Id.*) He needed reminders and a companion to go places. (*Id.*)

His condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, remember, complete tasks, concentrate, understand, use hands, and get along with others.

(*Id.*, PageID.199.) He was right handed. (*Id.*) He could walk 40 feet before needing to rest for 45 minutes. (*Id.*) Every day, he used a cane, walker, and wheelchair—all of them were prescribed on July 30, 2016. (*Id.*, PageID.200.)

Plaintiff's girlfriend, Zinnia Copeland, filled out a function report on behalf of Plaintiff in September 2016. (*Id.*, PageID.202-209.) She reported that he was unable to perform any work-related tasks, as he could not lift, walk, remember instructions, or manage his anger. (*Id.*, PageID.202.) On a typical day, he ate breakfast and lunch, watched television, visited with friends and family, took his medication, rested in bed, and talked on the phone. (*Id.*, PageID.203.) He needed help and reminders with most personal care, including dressing, bathing, shaving, and using the toilet; his shaky hands also made feeding himself difficult. (*Id.*, PageID.203-204.) He also needed reminders to take medication. (*Id.*, PageID.204.) He could not cook or manage chores, indoors or out. (*Id.*) He got outside every day to sit on his porch, and he could walk or ride in a car, but never alone due to his extreme risk of falling. (*Id.*, PageID.205.) He could not drive because he could not "perform necessary functions and coordination required." (*Id.*) Once a week he would shop in gas stations or convenient stores, but never alone. (*Id.*) He could count change but not pay bills, handle a savings account, or use a checkbook. (*Id.*) On a regular basis, he went to parks. (*Id.*, PageID.206.)

His conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (*Id.*, PageID.207.) Copeland also wrote that Plaintiff "[c]annot lift more than 5-10 lbs., walking is very limited, anything that requires leg maneuvers is almost

impossible." (*Id.*) After walking for two to three minutes, Plaintiff needed an hour to rest. (*Id.*) Copeland verified that Plaintiff daily used a walker, wheelchair, and cane. (*Id.*, PageID.208.)

### 3.    ALJ Hearing

At the ALJ hearing on June 15, 2018, Plaintiff stated that he had been in a motorcycle accident. (*Id.*, PageID.69-70.) He no longer drove and his driver's license was suspended for unpaid parking tickets. (*Id.*, PageID.70.) He lived with his girlfriend and his sister. (*Id.*) The State paid Plaintiff's girlfriend to act as a homecare assistant who would handle household chores; Plaintiff could make his own bed and take out the trash. (*Id.*, PageID.66-67.)

Plaintiff explained that pain and stiffness were significant challenges, as was numbness in his left foot and leg. (*Id.*, PageID.62.) He had pain everywhere and every day. (*Id.*) His headaches lasted all day and occurred daily. (*Id.*) He had had surgeries on his right arm, but denied having trouble using it to hold onto items or for daily activities (except for using the restroom). (*Id.*, PageID.63.) Without his cane, which he used all the time (except occasionally at home), he would fall over. (*Id.*, PageID.63-64.) He could stand for "like, 12, 15, 20 minutes probably," with the pain increasing as time passed. (*Id.*, PageID.64-65.) He needed to move around and would shift positions while seated. (*Id.*, PageID.65.) The medications helped but also made him dizzy and drowsy, and he would need to lie down. (*Id.*) Regarding walking, he simply said, "I can't walk that far." (*Id.*) He also struggled lifting and carrying items; when he held them in his left hand, he kept his cane in his right and he was thrown off balance. (*Id.*, PageID.66.)

The ALJ then asked the vocational expert (VE) to

> assume a person the same age, education, and work experience as Mr.
> Frazier. This person would be capable of light work, but can stand and/or
> walk only up to four hours total in an eight hour day, and sit six hours in an
> eight hour day. . . . There can be no ropes, ladders, or scaffolds; this person
> would need an assistant device to ambulate, and therefore, would only have
> the use of one upper extremity for carrying weights – that's just carrying, not
> holding, like, at a stationary position. . . . Only occasional remaining
> posturals . . . ; this person would have to avoid concentrated exposure to
> vibration, pulmonary irritants, and hazards. . . . This would be unskilled work
> involving simple, routine, repetitive tasks; no work with the public; only
> occasional interaction with co-workers and supervisors.

(*Id.*, PageID.73-74.) Could such an individual perform jobs in the national economy, the

ALJ asked. (*Id.*, PageID.74.) Yes, the VE responded: simple sorting work (125,000

positions) and packaging jobs like garment bagger and re-packer/packager (125,000

positions). (*Id.*, PageID.74-75.) The ALJ then "added to that hypothetical a sit/stand option

up to three times per hour." (*Id.*, PageID.79.) The same jobs were available, the VE stated,

saying she had assumed a sit/stand option was in the first hypothetical. (*Id.*, PageID.80.) If

the same person was off task for more than 20 percent of the day or would miss 2 to 3 days

of work each month, he could not maintain employment. (*Id.*, PageID.80-81.)

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability

decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into two

categories, "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513,

---

[1] Various regulations were amended after the claim was filed. See, e.g., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). The governing regulations here, however, expressly apply to claims filed before March 27, 2017, like Plaintiff's. See 20 C.F.R. § 404.1527.

416.913 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527, 416.927. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. §§ 404.1527(c), 416.927(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F.

11

Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996) and SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).[2] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. §§ 404.1529, 416.929 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ

---

[2] The Commissioner rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy. SSR 16-3p, 2016 WL 1119029, at *1. The underlying regulation, however, has remained materially unchanged. *See* 20. C.F.R. §§ 404.1529(c), 416.929(c).

ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 16-3p, 2016 WL 1119029, at *5; SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i) [D]aily activities;
(ii) The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain;
(vi) Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. §§ 404.1527(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

**G.   Analysis**

13

### 1. Party Arguments

Plaintiff's lone contention is that the ALJ erred by placing him in the "light work" category despite his need for an assistive device to walk.[3] (ECF No. 13, PageID.987.) The argument, in total, is this:

> In his RFC assessment, The ALJ determined that the Plaintiff has the residual functional capacity to perform light work except he can only stand/walk up to 4 hours in an 8 hour day and sit 6 hours; no ladders, ropes, and scaffolds; would need an assistive device to ambulate and therefore would only have the use of one upper extremity for carrying weights; can occasionally perform remaining postural maneuvers; would have to avoid concentrated exposure to vibration, pulmonary irritants and hazards; limited to unskilled work involving simple, routine, repetitive tasks; no work with the public; only occasional interaction with coworkers and supervisors. (R. 16). This assessment falls short of including the entirety of Plaintiff's documented limitations.

> In this case, the ALJ found that the Plaintiff needs the use of an assistive device to ambulate and would only have the use of one upper extremity for carrying weights. (R. 16). However, the ALJ also found that the Plaintiff could perform light work. SSA defines the physical exertion requirements of light work as lifting/carrying no more than 20 pounds at a time and frequently lifting or carrying objects up to 10 pounds. 20 C.F.R. § 416.967(b). It does not follow that someone who needs to use an assistive

---

[3] Plaintiff dresses up this claim as an attack on the Step 5 determination because the erroneous RFC skewed the number of jobs Plaintiff can actually complete. (ECF No. 13, PageID.988.) As Defendant points out, Plaintiff's framing of the issue is an effort to shift the burden to Defendant. (ECF No. 15, PageID.1001 n.1.) The burden is foisted on the Commissioner at Step 5 because "[i]t is thought to be unfair to require a lay claimant to prove that there are no jobs available in the economy which he can perform because such a determination requires a level of expertise in vocational matters. On the other hand, it is not unfair to require a claimant to prove the extent of his impairments." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Thus, at Step 5, the burden shift requires the Commissioner "to prove the availability of jobs in the national economy," but it does not mean that the Commissioner also bears the burden of proving the RFC. *Id.* at 392. As such, when the plaintiff's attack centers on the RFC, as it does here, courts will disregard the Step-5 packaging and treat the issue under Step 4, with the plaintiff bearing the burden. *See, e.g.*, *Flynn v. Comm'r of Soc. Sec. Admin.*, 2018 WL 5306640, at *3 n.2 (E.D. Mich. Aug. 1, 2018) ("Since the rest of this argument is entirely focused upon the supportability of the RFC, as opposed to the Step 5 analysis, the Court will treat it solely as an attack on the ALJ's underlying RFC finding."), *rep. & rec. adopted by* 2018 WL 5305077 (E.D. Mich. Aug. 24, 2018); *Gandy v. Comm'r of Soc. Sec.*, 2018 WL 2452206, at *8 (E.D. Mich. May 1, 2018) ("At the outset, I note that Plaintiff's challenge to the RFC assessment is not a Step-Five challenge [despite Plaintiff's presenting it as such]; the burden to prove the existence of Plaintiff's limitations rested with Plaintiff, not the ALJ."), *rep. & rec. adopted by* 2018 WL 2445036 (E.D. Mich. May 31, 2018). I will follow these cases here to the extent that Plaintiff is really challenging the RFC. However, no matter whom the burden falls upon, Plaintiff would lose for the reasons below.

device to ambulate could perform the lifting/carrying requirements of light work. Further, the jobs cited by the VE all require frequent reaching, handling, and fingering. It does not follow that someone who will have one hand occupied with an assistive device can perform reaching, handling, and fingering on a frequent basis.

It is important to reiterate that the ALJ failed to follow SSA regulations. The ALJ violated SSR 85-15 by not considering the effects of the above-mentioned limitations. Thus, even if there is substantial evidence to support non-disability, the decision cannot be upheld when SSA fails to follow its own regulations and where that error, as in this case, prejudices a claimant on the merits or deprives the claimant of a substantial right. *Rabbers v. Comm'r of Soc. Sec. Admin.,* 582 F.3d 647, 651 (6th Cir.2009). Therefore, the ALJ's decision should be reversed and benefits awarded immediately or in the alternative remand is required.

(*Id.*, PageID.988-989.)

Defendant counters that Plaintiff's brief is bereft of "authority or medical evidence in support of his argument." (ECF No. 15, PageID.1001.) A host of caselaw, cited by Defendant, holds that a light-work classification can coexist with the need for an assistive device if the ALJ relies on supporting VE testimony. (*Id.*, PageID.1002-1003.) Defendant then notes medical evidence indicating Plaintiff could perform light work with an assistive device. (*Id.*, PageID.1003.)

Additionally, Defendant argues that Plaintiff has failed to support his argument that use of a cane is inconsistent with the jobs the VE provided because they entail frequent reaching, fingering, and handling. (*Id.*, PageID.1004.) On the merits, Defendant cites numerous cases holding that "jobs requiring reaching, handling, or fingering do not necessarily involve the use of both hands." (*Id.*, PageID.1005.) In cases that have remanded on this issue, Defendant explains, the VE had "testified that the need to use a cane with one hand while standing would preclude the jobs that they had identified." (*Id.*, PageID.1006.)

These cases are distinguishable here because the VE did not testify that the cane would preclude employment, the RFC requires a cane only for walking, and the RFC is for light work. (*Id.*) Defendant also notes that the medical consultant did not find any manipulative limitations despite acknowledging Plaintiff's need for a cane. (*Id.*, PageID.1007 (citing ECF No. 11, PageID.93).)

Finally, Defendant states that SSR 85-15 does not apply here because both exertional and non-exertional limitations are at issue. (*Id.*, PageID.1007-1008.) Even if applicable, Defendant concludes the ALJ satisfied the regulation by considering the effects of Plaintiff's need for a cane. (*Id.*, PageID.1008.)

In reply, Plaintiff brushes off the caselaw Defendant presents as non-binding. (ECF No. 16, PageID.1013.) Relying on the definition of "carrying" in the *Selected Characteristics of Occupations* (SCO) as requiring holding items "in the hands or arms," he argues that "it is not possible for someone to satisfy the carrying requirements of light work when they need an assistive device to ambulate." (*Id.*, PageID.1012-1013.) "Furthermore," he continues,

> Plaintiff is not suggesting that the use of a cane automatically precludes the performance of light work . . . . Plaintiff's argument is centered around the fact that it is physically impossible within the SCO's definition of carrying that someone who needs an assistive device to ambulate can transport objects in their hands and arms while using an assistive device.

(*Id.*, PageID.1013.) Plaintiff also states that he

> agrees with Defendant that the reaching and handling definitions of the SCO indicate that a job may only require one hand to reach and handle. (Def.'s Resp. p. 10). However, should the Court accept this argument it should accept Plaintiff's argument that carrying is to be done with two hands and

that the Plaintiff cannot perform the carrying requirements of light work. The Defendant and Plaintiff used the same authority for support.

(*Id.*, PageID.1013-1014.)

## 2.    Application

Plaintiff's argument can be chopped into three parts, none of which persuade me that the ALJ erred. The first is that his need for a cane clashes with his ability to complete the carrying requirements for light work. To understand the argument, a bit of background is helpful.

"Light work" is an exertional standard defined in the regulations and the *Dictionary of Occupational Titles* (DOT). In the regulations, the standard requires the ability to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition, it demands "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id. See also* DOT, App. C, § IV, 1991 WL 688702 (1991) (defining "light work" as having the same lifting requirements as the regulations and also noting that even if the amount to be lifted is negligible, work is "light" "(1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible"). "Sedentary work" is another classification, which

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a

> sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(b); *see also* DOT, App. C, § IV, 1991 WL 688702 (providing a nearly identical definition).

A regulation and a Social Security Ruling speak to the present issue. The regulation, 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4), states that the "requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." The relevant Ruling, SSR 96-9p, states that a person who uses a "medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." 1996 WL 374185, at *7 (1996). The Ruling continues, "On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded." *Id.* The solution in these cases is "to consult a vocational resource." *Id.*

Plaintiff does not discuss any of this. His initial brief lays the foundation of his argument on a single line of *ipse dixit*: "It does not follow that someone who needs to use an assistive device to ambulate could perform the lifting/carrying requirements of light work." (ECF No. 13, PageID.988-989.) His reply brief goes a little further, but not much, relying on a strained reading of the SCO to suggest that carrying requires both hands to be

18

free. (ECF No. 16, PageID.1012.) The SCO's definition of "carrying"—"[t]ransporting and object, usually holding it in the hands or arms or on the shoulder," SCO, Appx. C—does not mean that carrying can be accomplished only with the use of both hands. Such a reading overlooks the provision's textual meaning and defies common sense. To begin, the definition is qualified by the adverb "usually," meaning that carrying occurs, if less frequently, through other means as well. Additionally, if this were a statute, the use of plural "hands or arms" would encompass the singular "hand[] or arm[]," 1 U.S.C. § 1, which also makes sense in the present context because people commonly use only one hand to "carry" objects weighing less than 10 pounds. And, if this were not enough, SSR 96-9p, 1996 WL 374185, at *7—certainly more on point than the SCO—acknowledges that carrying can be accomplished with one hand while the other grasps a cane.

Plaintiff would have fared no better had he turned to the caselaw on the topic, which "in this district has found that the use of a cane does not preclude light work." *Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (collecting cases); *see also Scott v. Comm'r of Soc. Sec.*, 2018 WL 6175375, at *6 (E.D. Mich. Nov. 5, 2018) ("Thus, courts have recognized that there is no *per se* rule that use of a cane to ambulate precludes performance of all light jobs."), *rep. & rec. adopted by* 2018 WL 6171602 (E.D. Mich. Nov. 26, 2018); *Gallegos v. Berryhill*, 2018 WL 1069585, at *9 (S.D. Tex. Jan. 22, 2018) ("Plaintiff's contention, based on Social Security Ruling 96–9p's discussion of sedentary work, that '[a]gency policy recognizes that the use of a cane is, at best, consistent with sedentary, not light, work' is unfounded." (citation omitted)), *rep. & rec. adopted by* 2018 WL 1035717 (S.D. Tex. Feb. 2, 2018). One court embracing this

view explained that "the regulation [20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4)] and ruling [SSR 96-9p] Harris cites only provide that use of a cane 'may' impact an individual's functioning capacity." *Harris v. Comm'r of Soc. Sec.*, No. 17-cv-11610, 2018 WL 3359102, at *3 (E.D. Mich. July 10, 2018). Put otherwise, the regulation and Ruling simply observe a possibility, not a certainty or even a likelihood, that a cane requirement would erode the job base for light work. And even if erosion occurs, enough light-work jobs might remain to support an RFC finding that a claimant can perform a full or limited range of light work.

A cane's impact on light work thus depends on the particular facts before the ALJ. That is why SSR 96-9p's solution is to direct the ALJ to contact a vocational resource. 1996 WL 374185, at *7 ("In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work."); *see also Collins v. Comm'r of Soc. Sec.*, 2019 WL 3421696, at *10 (E.D. Mich. June 30, 2019) ("Here, the RFC expressly recognizes Collins' need for a cane to ambulate, and . . . the vocational expert has testified that Collins could perform a significant number of jobs in the light work category *despite* his need to use a cane to ambulate. . . . Thus, the undersigned finds no error in the formulation of the RFC."), *rep. & rec. adopted by* 2019 WL 3412744 (E.D. Mich. July 29, 2019); *Scott v. Comm'r of Soc. Sec.*, 2015 WL 4634077, at *6-7 (E.D. Mich. July 6, 2015) (finding no reversible error where the VE "specifically testified that a significant number of jobs in the light work category were available for a person with plaintiff's RFC as stated by the ALJ *and* who

20

needed to use a cane for walking and standing"), *rep. & rec. adopted by* 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015).[4]

The ALJ here did just that, eliciting VE testimony that someone with Plaintiff's RFC—limited to light work with a cane for walking—could perform a significant number of jobs in the national economy. (ECF No. 7, PageID.74-75, 79-80.) As such, the ALJ did all that was required to justify his conclusion that "light work" jobs remained available despite the cane requirement.

To the extent Plaintiff meant to challenge the finding that he was physically capable of carrying up to 10 pounds while using a cane, he has failed to cite any medical records, address the ALJ's reasoning, or make any relevant contentions. As such, he has forfeited this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (citation omitted)).

Even assuming the argument was properly raised, the ALJ thoroughly canvassed the evidence. He noted, for example, Plaintiff's testimony concerning standing, walking, and the need for a cane. (ECF No. 11, PageID.48.) Also discussed were Plaintiff's

---

[4] The few cases that have come out the other way—which Plaintiff does not address—are distinguishable because the RFCs either failed to include a cane or required the claimant to carry 20 pounds, neither of which occurred here. *See Latham v. Comm'r of Soc. Sec.*, 2016 WL 11260314, at *7-8 (E.D. Mich. Dec. 27, 2016) (discussing the caselaw), *rep. & rec. adopted by* 2017 WL 1173773 (E.D. Mich. Mar. 30, 2017); *see also Steig v. Comm'r of Soc. Sec.*, 2019 WL 2118794, at *7 (W.D. Mich. May 15, 2019) (discussing one of the cases that ordered a remand and noting that it "did not conclude that the performance of light work was categorically incompatible with the use of a hand-held assistive device," but rather that the ALJ did not sufficiently address the matter).

conditions and rehabilitation efforts after his accident, which included right-hand surgery, inability to bear weight on his left leg, left-foot issues, some strength reduction, and problems with gait. (*Id.*, PageID.49-50.) Yet, the ALJ observed medical evidence showing improvement as time went on, including normal sensation, movement, strength, and station. (*Id.*, PageID.51.) Further supporting the ALJ was the medical opinion of agency consultant Dr. Milagros Flores, which concluded that Plaintiff could complete a limited range of light work while using a cane and "carrying weights by one upper extremity only." (*Id.*, PageID.93.) The ALJ gave this opinion great weight, and also adopted Flores's determination that Plaintiff could stand or walk for only four hours a day. (*Id.*, PageID.51, 93.)

As noted, Plaintiff has offered no critique of this analysis or the underlying medical evidence. It is true that Plaintiff suffered a horrific accident followed by a long and ultimately incomplete recovery. *See generally* (*Id.*, PageID.263-271, 415, 562, 603.) He damaged his right thumb, had carpal tunnel syndrome, displayed an abnormal gait, long complained of difficulties with his left leg, and experienced weakness, particularly in his left leg and foot. (*Id.*, PageID.432, 562, 643, 654, 694, 696, 710, 711, 761.) He eventually demonstrated normal movement of his extremities, displayed somewhat normal strength (3 to 5 out of 5), maintained normal coordination, had intact reflexes, largely (but not completely) normal range of motion, and, after undergoing rehabilitation, was able to increase the range of his gait. (*Id.*, PageID.562-563, 603, 613, 654, 730-733, 746, 758, 894, 899, 913 (noting also weak but steady gait), 918, 932, 936, 945; *see also id.*, PageID.910 (noting normal motor function but abnormal movement of extremities and decreased range

of motion), 911 (noting improved gait), 921 (in follow-up shortly after being released from the hospital, demonstrating muscle and joint tenderness and abnormal movement of extremities, but also normal motor function), 924 (same but no mention of motor function).) Other records show he denied pain in his thigh, knee, and back. (*Id.*, PageID.716.) Testing also revealed left foot drop, but "no electrodiagnostic evidence of a right or left lower limb radiculopathy, plexopathy or mononeuropathy." (*Id.*, PageID.714.) Through physical therapy, he was able to meet or partially meet his goals of improving his gait and squatting and kneeling. (*Id.*, PageID.765, 770, 772.) With the cane, he had a limp but could maintain a normal stance and do tandem and toe (but not heel) walks. (*Id.*, PageID.730.) No medical opinions suggested he was unable to use cane and carry 10 pounds or less.

According to a physical therapy report near the end of his treatments, he could get around without the cane inside his home; outside, he used the cane "80-90% of [the] time . . . due to fear of falling if faced w/ unexpected challenged to balance." (*Id.*, PageID.796.) To the occupational therapist, Plaintiff reported that he could use his right hand for basic daily activities without problem and "is able to carry a heavy object over 10lbs, carry a shopping bag, and push up from a chair with his [right] hand with no difficulty." (*Id.*, PageID.950.) In the therapy clinic, Plaintiff "was able to demonstrate safe ability to lift and carry up to 34[#?] toolbox with [right upper extremity]; carrying 17[#?] crate with [right upper extremity]." (*Id.*, PageID.950-951.)

Thus, at best for Plaintiff, the medical evidence cuts both ways and no medical opinions support Plaintiff's position. In these circumstances, Plaintiff's total failure to

address the medical evidence—*e.g.*, highlighting the relevant evidence and explaining why the parts favorable to him are more probative than the countervailing reports—is fatal to his argument. *See generally Bazzi v. Colvin*, 2015 WL 1245894, at *5 (E.D. Mich. Mar. 18, 2015) ("If the Commissioner's decision is supported by substantial evidence, 'it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.'" (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Without more, then, I cannot conclude that the ALJ erred.

The second part of Plaintiff's argument is that the jobs the VE provided are inconsistent with the need for a cane because "[i]t does not follow that someone who will have one hand occupied with an assistive device can perform reaching, handling, and fingering on a frequent basis." (ECF No. 13, PageID.989.) Once again, Plaintiff has failed to back up his assertion with medical evidence or legal authority, and has not attempted to reveal errors in the ALJ's decision—indeed, the entire analysis for this part of the argument is the conclusory statement just quoted. What is more, in his reply brief, Plaintiff walks back his argument by "agree[ing] with Defendant that the reaching and handling definitions of the SCO indicate that a job may only require one hand to reach and handle." (ECF No. 16, PageID.1013.) This concession was necessary because, as Defendant shows (ECF No. 15, PageID.1005-1006), the SCO defines the terms "reaching," "handling," and "fingering" to include the actions of one or both arms and hands. SCO, Appx. C (defining "reaching" as "[e]xtending hand(s) and arm(s) in any direction"; definition "handling" as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands"; and

24

defining "fingering" as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling").

Plaintiff's only counter to his own concession is his statement that if the Court accepts the Defendant's reading of the SCO on this point, it should likewise accept Plaintiff's interpretation of "carry" to require both hands (*i.e.*, the first part of his argument). (ECF No. 16, PageID.1013-1014.) There is no legal or logical basis for this argument. As noted above, the SCO's definition of "carry" reasonably includes the use or one hand or arm because the definition says only that carrying "usually" requires "hands" or "arms," the use of the plural encompasses the singular, and based on common sense it is clear that individuals can carry in one hand objects weighing ten pounds or less—Plaintiff does not present any argument that he is physically incapable of doing so. The definitions of "reaching," "handling," and "fingering" expressly include the singular. Plaintiff does not explain how these definitions are related to that of "carry," such that his interpretation of "carry" is somehow valid.[5] Therefore, I would reject this part of Plaintiff's argument.

Finally, Plaintiff's reliance on SSR 85-15 is unavailing. His entire argument is that the ALJ violated this Ruling "by not considering the effects of the above-mentioned limitations." (ECF No. 13, PageID.989.) This fails on the merits, as it relies on Plaintiff's previous (and unsuccessful) arguments discussed above. A deeper problem is that SSR 85-

---

[5] Plaintiff has not presented a textual analysis of these definitional provisions such as that the express use of the singular in "reaching," "handling," and "fingering" means that the absence of the singular in "carry" is meaningful. Even so, such an argument would not carry the day for Plaintiff in light of the caselaw squarely rejecting his contentions concerning the inconsistency between carrying objects and using a cane.

15 was only meant to clarify "policies applicable in cases involving the evaluation of solely nonexertional impairments." 1985 WL 56857, at *2 (Jan. 1, 1985). Thus, when the claimant has exertional limitations, the Ruling does not apply. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). Here, Plaintiff has exertional limitations, and consequently the Ruling is inapplicable.

### G.    Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits and I recommend **DENYING** Plaintiff's Motion, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the Commissioner's final decision denying benefits.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 11, 2020                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 11, 2020                    By s/Kristen Castaneda
                                        Case Manager